J-A14003-26

**NON-PRECEDENTIAL DECISION -
SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COREY MATTHEW SCANLON | : | No. 2059 EDA 2025 |

Appeal from the Order Entered July 11, 2025
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0004534-2024

BEFORE: DUBOW, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY DUBOW, J.: **FILED JULY 29, 2026**

The Commonwealth appeals from the July 11, 2025 order granting the

suppression motion filed by Corey Matthew Scanlon ("Appellee") following his

arrest for Persons Not to Possess Firearms and Firearm Not to be Carried

Without a License.[1] After careful review, we affirm the order suppressing the

firearm and certain statements that the Commonwealth concedes Appellee

made before the police informed him of his *Miranda* rights and reverse the

order suppressing certain statements that Appellee made spontaneously.

We glean the following factual and procedural history from the

suppression court's findings of fact and our review of the record available at

_____

[1] 18 Pa.C.S. §§ 6105(a)(2)(i) and 6106(a)(1).

the suppression hearing. On June 28, 2024, a motorcycle rally occurred in the parking lot in front of Appellee's motorcycle shop between 4:30 PM and 8:40 PM. The neighbors called 911 three times to complain about the noise and the "burnouts" occurring in the lot.[2] Eddystone Police Officer Mark Clark and others spoke with Appellee, who was working in his office during the rally, in an effort to quell the noise. Appellee did not participate in the rally and Officer Clark never observed Appellee engage in any behavior consistent with being disorderly or violent.[3]

Officer Clark, however, on July 8, 2024, filed a criminal complaint against Appellee, alleging that at the motorcycle rally, Appellee engaged in conduct that rose to the level of Disorderly Conduct and Recklessly Endangering Another Person, two misdemeanor offenses ("Motorcycle Rally Charges"). Although the criminal complaint alleged misdemeanors, Officer Clark applied for and obtained a warrant for Appellee's arrest rather than a summons.[4]

On July 8, 2024, Officer Clark drove to Appellee's business at 7:00 PM with the arrest warrant. Officer Clark recognized Appellee's pickup truck parked outside and waited in his police vehicle for over seven hours, until 2:28

_____

[2] We note that although police officers responded several times after neighbors called 911 to report the disturbance, police officers did not issue citations that night against any of the participants.

[3] N.T. Suppression Hr'g, 5/29/2025, at 35.

[4] Magistrate Judge Vincent Gallagher signed the arrest warrant based on Officer's Clark's complaint docketed at MJ-32131-0000-143-2024.

AM on July 9, 2024, for Appellee to leave his office. We note that although Officer Clark recognized Appellee, Officer Clark did not serve the arrest warrant at this point. Rather, Officer Clark observed Appellee leave his office, enter his truck, and drive down Chester Pike.  Officer Clark, with his body camera actively recording, followed him.

Both vehicles then stopped at a red traffic light located at a turn-off for Eddystone Plaza Shopping Center. We note again that Officer Clark did not attempt to pull Appellee over at the shopping center, which had a parking lot, to serve the arrest warrant.  Rather, Officer Clark continued to follow Appellee and then activated his lights and siren on Chester Pike, a four-lane roadway- a location at which the vehicle would block the roadway, so the police would have to tow the vehicle. As a result of the need to tow the vehicle, the police would have the authority to conduct an inventory search of the vehicle without a search warrant.

Appellee stopped in the right lane on Chester Pike and Officer Clark asked Appellee to exit his vehicle. Appellee asked Officer Clark why Officer Clark had stopped him and Officer Clark refused to answer. Instead, Officer Clark told Appellee that Officer Clark would let Appellee know once Appellee exited his vehicle.  After asking several more times why he was pulled over, Appellee exited his vehicle, Officer Clark handcuffed him, and as he placed Appellee in the back to the police vehicle, Officer Clark then informed him that there was a warrant outstanding for his arrest in connection with the motorcycle rally.

Although Appellee had not been given his *Miranda*[5] warnings, Officer Clark asked Appellee if he had a firearm in his car and Appellee at first did not respond. Officer Clark asked again and Appellee responded that he did not know. Officer Clark then shut the backdoor of the police vehicle, walked to the front of the police vehicle, and said to another officer, "That tells me there's a firearm in the truck." Commonwealth Ex. 4 ("Video") at 3:07-3:10. Officer Clark then went back to Appellee to ask if he had his phone on him, and Appellee responded, "No I don't. And I don't give consent to search my vehicle." Video, at 3:27-28.

Although Appellee withheld his consent to search his vehicle, Officer Clark returned to Appellee's car and observed a cell phone on the driver's seat and began searching the interior of the car. Officer Clark grabbed the cell phone, stated "that's valuable," and then continued his search of the entire vehicle and the contents of various bags found in the truck. Video at 4:02. Officer Clark found a firearm located under the armrest and a coin tray. As he concluded the search, Officer Clark instructed another officer to "Mirandize him." Video at 13:21.

Later that day, on July 9, 2024, Officer Clark filed a criminal complaint charging Appellee with firearms offenses. Following a preliminary hearing on October 14, 2024, the magisterial district court transferred the matter to the

_____

[5] *Miranda v. Arizona*, 384 U.S. 486 (1966).

Court of Common Pleas.  On February 3, 2025, the court scheduled trial for July 7, 2025.

On February 5, 2025, Appellee filed an omnibus pre-trial motion seeking, in relevant part, suppression of the firearm found in the car and the statements he made to police after his arrest on July 9, 2024.  Appellee did not challenge the legality of the traffic stop or the probable cause supporting the arrest warrant for the Motorcycle Rally.[6]  Rather, he simply contended that "the search of the center console was not intended to be an inventory search, but rather was intended to be a search for any contraband without probable cause."  Mot. to Suppress, filed 2/5/25, at 2.

On May 29, 2025, the court held a hearing on the motion at which the Commonwealth presented testimony from Officer Clark and proffered the recording captured on Officer Clark's body camera.  During Officer Clark's direct and cross-examination testimony, the parties played portions of the recording.[7]  The court admitted the entire recording.  *See* Commonwealth Ex. 4. In addition, the court admitted a copy of the arrest warrant for the

---

[6] We highlight the fact that the Commonwealth never pursued the Motorcycle Rally charges that served as the basis for the arrest warrant and Officer Clark's stopping Appellee on Chester Pike. Our search for the Motorcycle Rally charges at Docket No. MJ-32131-0000143-2024 through the Unified Judicial System's website, pacourts.us, returned a "no results found" response.

[7] The video was marked as Commonwealth Exhibit 4.  *See* N.T. Suppression Hr'g, 5/29/25, at 2. Upon this Court's request, the Commonwealth supplemented the record with a digital copy of the video.

Motorcycle Rally, along with copies of Eddystone Police Procedures and its Vehicle Towing Policy. *See* Commonwealth Exs. 1, 2, 3.

Appellee's counsel rigorously cross-examined Officer Clark regarding Appellee's involvement at the motorcycle rally and Officer Clark's affidavit of probable cause submitted to obtain the arrest warrant. The defense also questioned Officer Clark about his request to obtain an arrest warrant instead of a summons.

In addition to the bodycam video, the court admitted into evidence a copy of the form listing the inventory recovered from Appellee's vehicle, the criminal complaint for the firearm charges, and Officer Clark's Investigation Report to support the firearm charges. We note that the inventory of the car demonstrated that the police did not remove for safekeeping everything of value.

Appellee presented no witnesses. Appellee's counsel argued, *inter alia*, that Officer Clark's actions demonstrated a pretext in order for Officer Clark to be able to search Appellee's vehicle without a search warrant. The pretext began with Officer Clark's obtaining an arrest warrant rather than a summons for the Motorcycle Rally charges. This request violated police policy and Pa.R.Crim.P. 509[8] which authorizes the issuance of a summons when the

_____

[8] Pa.R.Crim.P. 509 provides the following, in relevant part:

> If a complaint charges an offense that is a court case, the issuing authority with whom it is filed shall:

*(Footnote Continued Next Page)*

police charge a defendant with charges graded as a first-degree misdemeanor or less.

Appellee further argued that by obtaining an arrest warrant, however, Officer Clark was able to stop Appellee with a traffic stop and search Appellee's vehicle. Furthermore, by waiting to stop Appellee until Appellee was driving on Chester Pike and avoiding requiring Appellee to stop at the shopping center parking lot, Officer Clark expanded his authority to search Appellee's vehicle without a warrant.

On July 7, 2025, the court entered an order granting Appellee's suppression motion. On July 29, 2025, the court filed its Findings of Fact and Conclusions of Law ("FOF"). The court, concluding that Pa.R.Crim.P. 509 did

_____

> (1) issue a summons and not a warrant of arrest in cases in which the most serious offense charged is a misdemeanor of the second degree or a misdemeanor of the first degree in cases arising under 75 Pa.C.S. § 3802, except as set forth in paragraph (2);
>
> (2) issue a warrant of arrest when:
>
> (a) one or more of the offenses charged is a felony or murder; or
> (b) the issuing authority has reasonable grounds for believing that the defendant will not obey a summons; or
> (c) the issuing authority has reasonable grounds for believing that the defendant poses a threat of physical harm to any other person or to himself or herself; . . . or
>
> (3) issue a summons or a warrant of arrest, within the issuing authority's discretion, when the offense charged does not fall within any of the categories specified in paragraphs (1) or (2).

not authorize the issuance of an arrest warrant rather than a summons, emphasized that the evidence demonstrated that when Officer Clark saw Appellee during the motorcycle rally, Appellee did not indicate that he would refuse to attend court if he were issued a citation and did he act in a violent manner or try to leave or flee. FOF, 7/29/25, at 4-5. The court also emphasized Officer Clark's acknowledgment that on the evening of the motorcycle rally, Appellee "had not been out in the parking lot engaging in behavior consistent with disorderly conduct." *Id.* at 5 ¶4(r).[9]

The court observed that Officer Clark testified that Appellee did not pose a threat of physical harm to another person or himself and concluded that Officer Clark "did not have reasonable grounds to believe Appellee would not obey a summons[.]" *Id.* at 5 ¶4(w). Thus, Officer Clark did not have a basis to request an arrest warrant instead of a summons.

In addition, the court concluded that notwithstanding the affidavit of probable cause that Officer Clark submitted to Magistrate Gallagher, the "police did not persuade this court of the existence of any special circumstances" and "did not properly comply with the rules providing for the use of summons in a court case." *Id.* at 11-12 (citing Pa.R.Crim.P. 509). In other words, the court concluded that Officer Clark's testimony at the

_____

[9] In addition, the body camera video revealed that Officer Clark brought the REAP charge against Appellee based only on the fact that the motorcycle rally occurred in the parking lot in front of Appellee's business and not because Appellee had participated in any behavior that recklessly endangered anyone's life. *See* Video at 24:58-25:20.

suppression hearing regarding the motorcycle rally did not convince the suppression court that Officer Clark had a reasonable basis for seeking an arrest warrant instead of a summons, particularly since the Motorcycle Rally Charges were misdemeanors.

With respect to the stop, search, and seizure, the court noted that Officer Clark knew that the vehicle belonged to Appellee because he had previously seen him driving it and parking it in front of his business, knew that Appellee was at his business on July 8, 2025, from 7:00 PM until early the following morning at 2:28 AM, and "purposely waited until after [Appellee] left his place of business before attempting to serve [*sic*] the arrest warrant." *Id*. at 4 ¶¶ 4(j), (o). The court concluded that the vehicle "stop was pretextual, and under these circumstances, the pretextual stop was not proper." *Id.* at 9 ¶8. The court further found that Officer Clark violated police procedures:

> Police violated department policy by obtaining an arrest warrant on misdemeanor charges and then holding the arrest warrant until [Appellee] got into his vehicle and started operating the vehicle. The stop actually was for suspicion of activity unrelated to the arrest warrant. Patrolman Clark requested the issuance of the arrest warrant in violation of proper policy and procedures and rather than use a summons used the arrest warrant as a pretext to stop the vehicle.
> * * *

FOF at 9, 13; *see also* Tr. Ct. Op., 10/29/25, at 15-18 (same).

In conclusion, the trial court found that the Commonwealth failed to demonstrate that the inventory search of Appellee's car was proper and because the police failed to obtain a search warrant, the trial court suppressed the evidence from Officer Clark's search of the vehicle:

The Commonwealth did not show the inventory search was proper or legal, and did not persuade this court that the warrant, stop, and subsequent search were conducted for any reason other than for the purposes of investigation; police did not comply with the rules and policies concerning inventory searches of [a] vehicle.

*Id.*

The Commonwealth filed a motion for reconsideration, which the court denied. This timely appeal followed. Both the court and the Commonwealth complied with Pa.R.A.P. 1925.

The Commonwealth raises the following questions for our consideration:

1. Whether the trial court improperly concluded Officer Clark's traffic stop of Appellee to execute a valid arrest warrant was unlawful because it was "pretextual"?

2. Whether the trial court erred when it concluded the inventory search was investigatory in nature and suppressed the firearm discovered pursuant to a reasonable inventory policy?

3. Whether the trial court erred when it suppressed Appellee's statements that were not the product of custodial interrogation but rather spontaneous utterances?

Commw's Br. at 4.

\*\*\*

We address the Commonwealth's first two issues together. The Commonwealth first argues that whether Officer Clark acted with pretext in his actions is irrelevant to the determination of whether the stop and search violated Appellee's Fourth Amendment rights. Commw's Br. at 15-25. It also argues that Officer Clark's search was not for investigatory purposes; rather, it was an inventory search for which no warrant was required. *Id*. at 26-29. We disagree.

- 10 -

Although we agree with the trial court's finding that Officer Clark's actions were pretextual in that he obtained an arrest warrant instead of a summons and waited to require Appellee to pull over until Appellee was driving on Chester Pike so that the police would need to impound the vehicle and thus, have the right to search the vehicle without a warrant, our analysis ultimately rests on the constitutionality of the police's warrantless search of the vehicle.[10] In sum, we affirm the trial court's suppression of the firearm because the evidence is undisputed that Officer Clark conducted the inventory search for investigatory and not caretaking purposes and, thus, his warrantless search violated Appellee's constitutional rights.[11]

Our standard of review for suppression determinations is well settled. We review the grant of a suppression motion to determine "whether the record supports the trial court's factual findings and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Carmenates*, 266 A.3d 1117, 1122-23 (Pa. Super. 2021) (*en banc*) (citation omitted). We defer to the suppression court's factual findings if they are supported by the record. *Commonwealth v. Batista*, 219 A.3d 1199, 1206 (Pa. Super. 2019).

_____

[10] *See Commonwealth v. Gatlos*, 76 A.3d 44, 62 n. 14 (Pa. Super.2013) (providing that we may affirm on any basis that appears in the record).

[11] We note our extreme displeasure with Officer Clark's actions in this matter and assume that the appropriate body will investigate his conduct.

Those findings of fact "are dependent on the suppression court's credibility determinations." *In re L.J.*, 79 A.3d 1073, 1085 (Pa. 2013). We, thus, "defer to the suppression court's findings of fact because, as the finder of fact, it is the suppression court's prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony." *Carmenates*, 266 A.3d at 1127. "A suppression court may find some evidence favorable to the Commonwealth to be credible, and other evidence favorable to the Commonwealth to be incredible. Only after the court assesses and weighs all of the facts may the court issue conclusions of law specifically relating to those findings of fact." *In re L.J.*, 79 A.3d at 1085. As oft noted, "[c]redibility determinations are exclusively within the province of the suppression court and may not be disturbed absent a finding of clear and manifest error." *Commonwealth v. Yorgey*, 188 A.3d 1190, 1198 (Pa. Super. 2018) (*en banc*). We, however, give no such deference to the suppression court's legal conclusions and, instead, review them *de novo*. *Id.*

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Wallace*, 42 A.3d 1040, 1047-48 (Pa. 2012); *see also* Pa.R.Crim.P. 581(H) (providing that where a defendant files a motion to suppress evidence, "[t]he Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence

was not obtained in violation of the defendant's rights[.]"); *see also id.* at Comment (stating that the standard of proof is a preponderance of the evidence). The Commonwealth "satisfies its preponderance of the evidence burden if it proves to the satisfaction of the suppression court that the evidence was properly seized." *Commonwealth v. Fulton*, 345 A.3d 352, 360–61 (Pa. Super. 2025) (citation omitted).

"The Fourth Amendment of the United States Constitution and Article 1, Section 8 of our state Constitution protect citizens from unreasonable searches and seizures." *Commonwealth v. McCleary*, 193 A.3d 387, 391 (Pa. Super. 2018). "The relevant inquiry is . . . not the officers' subjective beliefs at any given time but the objective reasonableness of the search under the totality of the circumstances." *Commonwealth v. Carver*, 318 A.3d 386, 391 (Pa. Super. 2024) (citation omitted). "A warrantless search or seizure is presumptively unreasonable under the Fourth Amendment and Article I, § 8, subject to a few specifically established, well-delineated exceptions." *Commonwealth v. McCree*, 924 A.2d 621, 627 (Pa. 2007). The exclusionary rule bars the use of illegally obtained evidence in state prosecutions in order to deter illegal searches and seizures. *Commonwealth v. Arter*, 151 A.3d 149, 153-54 (Pa. 2016).

An exception to the warrant requirement is an "inventory search" when a vehicle is going to be lawfully towed by police officers following a lawful traffic stop. "An inventory search of an automobile is permissible when (1)

the police have lawfully impounded the vehicle; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle." ***Commonwealth v. Lagenella***, 83 A.3d 94, 102 (Pa. 2013); ***see also Florida v. Wells***, 495 U.S. 1, 4 (1990) (holding that the state must demonstrate that the police department has a policy in place to guide it in inventory searches). "The purpose of an inventory search is not to uncover criminal evidence, but to safeguard items taken into police custody in order to benefit both the police and the defendant." ***Lagenella***, 83 A.3d at 102 (citing ***Commonwealth v. Nace***, 571 A.2d 1389, 1391 (Pa. 1990)); ***see also South Dakota v. Opperman***, 428 U.S. 364, 369 (1976) (enumerating purposes of permissible warrantless inventory searches of vehicles).

Where an "appellant [is] already in custody and there [is] no danger that any contraband within the car could be removed by him," the police must obtain a search warrant. ***Commonwealth v. Casanova***, 748 A.2d 207, 212 (Pa. Super. 2000) (citation omitted). This search warrant requirement applies even where police departments have procedures in place to ensure that an inventory search does not serve as a pretext for a general search to discover incriminating evidence and the police suspect that there may be contraband in the vehicle. ***Id.*** In other words, the warrantless search of an impounded vehicle is limited to a reasonable search for caretaking purposes; the warrantless search cannot be for investigatory purposes.

***Commonwealth v. Hennigan***, 753 A.2d 245, 256 (Pa. Super. 2000) (citation omitted).

In this case, Officer Clark's warrantless search of the vehicle was not for caretaking, but for investigatory purposes. Officer Clark's body camera recording reveals that after Officer Clark observed and heard Appellee's responses to his question of whether Appellee had a gun in his car, he walked to the front of his police vehicle and stated to another officer that Appellee's responses "tell[] me there's a firearm in the truck." Video at 3:07-3:10. This indicates that Officer Clark suspected that there was contraband in the vehicle and, thus, his subsequent warrantless search of the vehicle was for investigatory and not caretaking purposes. Thus, the trial court properly suppressed the firearm that Officer Clark found in the vehicle.

The Commonwealth argues that Officer Clark's search was a proper inventory search because it comported with the Eddystone Police Department's towing and inventory procedures. Although this may be true, the evidence demonstrated that Officer Clark's purpose to search vehicle was for investigatory, and not caretaking purposes. Thus, we reject this argument.

\*\*\*

In its last issue, the Commonwealth argues that the suppression court erred in suppressing certain statements Appellee made while in police custody.

Commw's Br. at 29.[12]   In particular, the Commonwealth challenges the suppression of three categories of statements: (1) complaints about how he was being treated, (2) conversations with the police while at the police station that Appellee initiated, and (3) comments made to his girlfriend and father over the phone after he was fingerprinted ("Appellee's Statements").   The Commonwealth argues that the trial court erred in suppressing Appellee's Statements because they were not the product of custodial interrogation.   *Id.* at 30-32.   We agree.

It is well-established that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.   By custodial interrogation, we mean questioning **initiated** by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."   *Miranda*, 384 U.S. at 444 (emphasis added).   Accordingly, "[s]tatements made during custodial

_____

[12] The Commonwealth concedes (and we appreciate the Commonwealth's candor) that the trial court properly suppressed certain statements.  Commw's Br. at 31 n.3.  In particular, the statements ("Suppressed Statements") include: (1) Officer Clark asks Appellee whether there are any firearms in the vehicle, to which Appellee responds by saying "I don't know." (Video at 2:48); (2) while Appellee is being fingerprinted, Officer Clark asks him "You are the owner of Militant Motor Company, correct?", to which Appellee responds "yeah." (Video at 42:23); and (3) while Appellee is being fingerprinted, Officer Clark asks Appellee about why Philadelphia Police questioned him on an unrelated incident and Appellee responds (Video at 45:34).

interrogation are presumptively involuntary, unless the accused is first advised of [his] ***Miranda*** rights." ***Commonwealth v. Williams***, 941 A.2d 14, 30 (Pa. Super. 2008) (*en banc*). Interrogation occurs when the police should know that their words or actions are reasonably likely to elicit an incriminating response, and the circumstances must reflect a measure of compulsion above and beyond that inherent in custody itself. ***Commonwealth v. Bracey***, 461 A.2d 775, 780 (Pa. 1983).

The law is clear, however, that unsolicited remarks that are not the result of custodial interrogation are "spontaneous, voluntary statements not subject to suppression." ***Commonwealth v. Fisher***, 769 A.2d 1116, 1125 (Pa. 2001); ***see also Commonwealth v. Johnson***, 42 A.3d 1017, 1029 (Pa. 2012) (stating that "***Miranda*** does not preclude the admission of spontaneous utterances"); ***Commonwealth v. Baez***, 720 A.2d 711, 720-21 (Pa. 1998) (concluding that the "appellant's [post-arrest] spontaneous utterances were not rendered involuntary simply because he had a pair of handcuffs on his hands").

In this case, the record reflects that Appellee did not make Appellee's Statements while the police were interrogating him; rather, he made them spontaneously. Thus, the trial court erred in suppressing Appellee's Statements and we reverse that portion of the trial court order.

\*\*\*

In conclusion, we affirm the trial court's suppression of the firearm and the Suppressed Statements but reverse the suppression of Appellee's Statements.

Order affirmed in part, reversed in part.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/29/2026